IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| IMPLUS FOOTCARE, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 5:17-cv-00076 |
| v. | ) |
| | ) |
| SEQUENTIAL BRANDS GROUP, INC. | ) |
| | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff Implus Footcare, LLC ("Implus"), complaining of the actions of Sequential Brands Group, Inc. ("Sequential" or "Defendant"), alleges as follows:

## NATURE OF THE ACTION

1. This is an action for patent infringement. Plaintiff Implus brings this suit to protect and enforce its rights under United States Patent No. 9,005,146 (the "'146 Patent" or the "patent-in-suit") against defendant Sequential, who has willfully infringed and is infringing upon those rights by manufacturing and selling at least three products, the "SPRI Sports Performance Roller," the "SPRI Deep Tissue Roller", and the "GAIAM Restore Deep Tissue Roller," that incorporate one or more of the claims in the '146 Patent (the "Infringing Products"). By this action, Implus seeks to permanently enjoin Sequential's further manufacture and sale of the Infringing Products, and to recover compensatory damages, treble damages, and attorneys' fees for Sequential's prior infringement pursuant to at least 35 U.S.C. §§ 271, 281, 283-285.

## PARTIES

2. Implus is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in the State of North Carolina.

3. On information and belief, defendant Sequential Brands Group, Inc. is a Delaware corporation, having its principal place of business in the State of New York.

**JURISDICTION AND VENUE**

4. This action arises under the patent laws of the United States, 35 U.S.C. § 100 *et seq.*, including §§ 271, 281, 283-285.

5. This Court has subject matter jurisdiction over this controversy under at least 28 U.S.C. §§ 1331, 1338(a), and 1338(b).

6. This Court has personal jurisdiction over Sequential consistent with the Due Process Clause of the federal Constitution and the North Carolina Long Arm Statute because Sequential continuously, systematically, and purposefully conducts business within this District, such that Sequential should reasonably anticipate being haled into court in this jurisdiction, and because Implus's causes of action arise directly from Sequential's business contacts and other activities in the State of North Carolina and in this District.

7. Sequential, directly and/or through authorized intermediaries, ships, distributes, offers for sale, sells, and/or advertises products and services in the United States, the State of North Carolina, and the Eastern District of North Carolina including but not limited to the Infringing Products as detailed below. Sequential solicits customers in the State of North Carolina and in the Eastern District of North Carolina. Sequential has paying customers who are residents of the State of North Carolina and of this District, and who use Sequential's products and services in this State and this District.

8. Venue in this District is proper under 28 U.S.C. § 1391 and 28 U.S.C. § 1400(b). On information and belief, Sequential has transacted business in this District and has committed

acts of patent infringement in this district, by making, using, or selling the Infringing Products within this District.

## FACTS

9. Plaintiff Implus is the owner of all right, title, and interest in and to the '146 Patent.

10. The application that matured as the '146 Patent, titled "MASSAGE ROLLER," was filed on January 13, 2010, by Implus's corporate predecessor-in-interest, Trigger Point Technologies, LLC ("Trigger Point"). Implus Footcare, LLC, is listed as the assignee on the face of the '146 Patent. The patent was duly issued by the United States Patent and Trademark Office on April 14, 2015. A true and correct copy of the '146 Patent is attached hereto as Exhibit A.

11. The '146 Patent covers a hollow core massage roller that effectively addresses tender and painful conditions, such as muscle or connective tissue conditions and that can be used as a core workout or strengthening apparatus.

12. The '146 Patent claims, *inter alia*, a single cylindrical roller core, a roller body (*e.g.*, a foam layer) provided on this core, a plurality of curvilinear massage zones, in which the sum of the thicknesses of the core and the roller body is less than the inner radius of the core, and the length of the core is greater than the diameter of the massage roller.

13. As described in the Abstract to the '146 Patent, the patent covers a massage roller including a generally resilient roller body and a plurality of massage zones optionally allowing for various densities provided on the roller body.

14. The '146 Patent is currently in full force and effect and, in accordance with 35 U.S.C. § 282, that patent and all claims therein are presumed to be valid.

3

15. The claims of the '146 Patent withstood validity challenges via an *inter partes* review ("IPR") in Case No. IPR2016-01227 before the Patent Trial and Appeal Board ("PTAB") of the U.S. Patent and Trademark Office.

16. Specifically, on December 12, 2016, the PTAB denied the IPR petition in Case No. IPR2016-01227, and denied institution of the IPR, holding that the petitioner in that case, despite having advanced twenty-one (21) separate alleged grounds of invalidity based on numerous alleged references, had not succeeded in demonstrating a reasonable likelihood of prevailing with respect to any of the claims of the '146 Patent.

17. Implus acquired Trigger Point in a stock transaction in 2014, and thereby assumed all of Trigger Point's rights of recovery under the '146 Patent, including the exclusive right to sue for infringement and recover past damages. Implus is also an express assignee of the '146 Patent.

18. Over the past five years, Implus and Trigger Point have commercialized the invention set forth in the '146 Patent by marketing at least four different massage rollers under the Trigger Point Performance Therapy® GRID® brand. Each of these products utilize that patented technology set out in the '146 Patent to create Distrodensity® zones, in which massaging zones of different depths and surface widths replicate the feeling of massage.

19. The contoured, three-dimensional surface of the GRID Rollers, which feature areas of foam allowing for varying levels of firmness, allows for tissues to aerate when rolling, which in turn promotes the flow of blood and oxygen for muscle repair. Consumers use these GRID Roller products to relieve muscle and joint pain and improve flexibility and range of motion, either during an athletic workout or as part of a pre- or post-workout routine. True and

4

accurate depictions of the four current GRID Roller products (the GRID, GRID X, GRID 2.0, and GRID Mini), are attached hereto as Exhibit B.

20. Implus and its corporate predecessor Trigger Point have manufactured and sold over one million GRID Rollers incorporating and embodying the claims of the '146 Patent. In 2014 alone, they expended over $1 million in advertising and marketing efforts in support of these products.

21. For over five years, Implus and Trigger Point clearly labeled the GRID Roller products as patent pending, putting all would-be competitors on notice of their pending claim to the exclusive use of the technology reflected in those products.

22. In March, 2012, Trigger Point published the pending patent, further putting the marketplace and its competitors on notice of the proprietary technology incorporated in the GRID Rollers and its inventor's intent to defend its intellectual property rights.

23. On April 28, 2015, shortly after the '146 Patent was issued, Implus issued a press release announcing the issuance of the '146 Patent and further publicly declaring its intent to enforce the rights granted thereunder against competitors infringing upon those rights. This press release was picked up and reprinted widely in the sporting goods trade press.

24. As a result of this announcement, at least one manufacturer of an infringing massage roller product voluntarily contacted Implus to negotiate a change in the design of its product so as to avoid continued infringement.

25. In contrast, Sequential, as well as its predecessor-in-interest GAIAM, Inc., have systematically and willfully ignored both the "Patent Pending" notices on the GRID Roller products, the publication of the pending patent, and the public notice of the issuance of the '146

5

Patent to continue to manufacture and sell the Infringing Products, true and accurate depictions of which are attached hereto as Exhibit C.

26. In or around June 2015, Implus began marking the GRID Roller products with the '146 Patent.

27. On or about May 16, 2016, Implus served Sequential with a cease and desist letter setting forth in detail Implus's intellectual property rights in the '146 Patent and the infringing conduct, a true and accurate copy of which is attached hereto as Exhibit D. In the letter, Implus demanded a response from Sequential no later than May 30, 2016.

28. Sequential has had actual knowledge of the '146 Patent since at least the date of service of the May 16, 2016 Cease and Desist letter.

29. As of the date of filing of this Complaint, Sequential has failed to respond to the May 16, 2016 Cease and Desist letter, and, despite notice, Sequential has failed and refused to stop selling the Infringing Products.

30. Sequential's infringement of the '146 Patent has been and is, upon information and belief, neither innocent nor unintentional, but willful and malicious. Sequential is a direct competitor of Implus in the sports massage foam roller market, and as such are well aware of the GRID Roller products and their distinctive features.

31. Sequential has sold and continues to sell the Infringing Products through various online and brick-and-mortar retailers, including but not limited to GAIAM.com, Spri.com, Amazon.com, Target, and Dick's Sporting Goods. A representative sample of true and accurate copies of online advertisements of the Infringing Products are attached hereto as Exhibit E.

32. On information and belief, Sequential's infringement of the '146 Patent is willful and deliberate, entitling Implus to enhanced damages and reasonable attorney fees and costs.

6

Case 5:17-cv-00076-D   Document 1   Filed 02/13/17   Page 6 of 10

33. As a direct and proximate cause of the infringement by Sequential and unless Sequential is enjoined by the Court from manufacturing, importing, offering to sell, selling, or using within the United States products covered by the claims of the patent-in-suit, Implus is being and will continue to be substantially and irreparably harmed in its business and property rights.

## COUNT ONE
### (For Patent Infringement, Patent No. 9,005,146)

34. Implus realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

35. Implus is the sole owner of the entire right, title, and interest in and to the '146 Patent, including the right to sue and recover for any and all infringement thereof.

36. In or around July 2016, Sequential purchased the GAIAM and SPRI branded product lines, including, *inter alia*, the Infringing Products.

37. Sequential has been and is now directly infringing one or more claims of the '146 Patent by making, using, selling, offering for sale and/or importing product(s) including but not limited to the Infringing Products depicted in Exhibit C.

38. Claim 1 of the '146 Patent recites "A massage roller comprising: a single, generally elongated, cylindrical roller core having: a first axial end, a second axial end, and a core length extending between the first and second axial ends; a hollow core interior extending the core length and forming an inner core surface having an inner core radius and an inner core diameter twice the inner core radius; an exterior core surface having an exterior core radius; and a core thickness extending radially between the inner core surface and the exterior core surface; and a roller body provided on the roller core comprising a plurality of curvilinear massage zones distributed substantially continuously, both radially and axially, on the exterior core surface, each

7

massage zone having: a selected one of a first softness and a second softness; a substantially continuous, both radially and axially, massage surface having an exterior zone radius and an exterior zone diameter twice the exterior zone radius; and a zone thickness extending radially between the exterior core surface and the massage surface; wherein: the sum of the core thickness and the zone thickness is less than the inner core radius; and the core length is greater than the exterior zone diameter."

39. As such, Claim 1 of the '146 Patent is directed to a massage roller with, *inter alia*, a cylindrical roller core and a roller body provided on the roller core, wherein the roller body includes massage zones. The massage zones, each with a selected softness, thickness, and massage surface, are distributed on the exterior core surface.

40. The Infringing Products contain all of the elements of at least claim 1 of the '146 Patent.

41. Specifically, as exemplified by these depictions in Exhibit C, the Infringing Products possess, *inter alia*, a single cylindrical hollow roller core, a roller body (*e.g.,* a foam layer) provided on this core, and a plurality of curvilinear massage zones. Moreover, upon information, belief, and investigation, in the Infringing Products, the sum of the thicknesses of the core and the roller body is less than the inner radius of the core, and the length of the core is greater than the diameter of the massage roller. Thus, the Infringing Products infringe upon at least claim 1 of the '146 Patent.

42. Sequential has marketed and/or sold the Infringing Products throughout the United States, including within this District.

43. Upon information and belief, Sequential's actions have at all times been knowing, intentional, willful, and malicious. Such willfulness is evident from Sequential's

continued marketing and sale of the Infringing Products despite knowledge and notice of the existence of the '146 Patent. Sequential's willful and knowing violation of Implus's rights under the '146 Patent renders this an exceptional case under 35 U.S.C. § 285.

44. Sequential has and continues to unlawfully derive income, profits, and goodwill from their infringing activities, which also serve to unlawfully divert sales and profits away from Implus.

45. Implus has been and will continue to be irreparably damaged through the ongoing infringement of the '146 Patent, caused by Sequential's marketing and sale of the Infringing Products. Implus has no adequate remedy at law for this damage. The damage to Implus includes harm to its market position, goodwill, and customer base that cannot be adequately measured in, or compensated by, money damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Implus respectfully prays the Court:

a. For a judgment in favor of Implus that Sequential has infringed the '146 Patent;

b. For a permanent injunction enjoining Sequential and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith, from infringement of the '146 Patent;

c. For a judgment and order requiring Sequential to pay Implus at least its damages, costs, expenses arising from Sequential's infringement of the '146 Patent as provided under 35 U.S.C. § 284, together with pre- and post-judgment interest thereon at the maximum legal rate;

d. For a judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285, and an award to Implus of its reasonable attorneys' fees;

e. For a trial by jury upon all claims so triable; and

f. For such other and further relief as the Court may deem just and proper.

DATED this 13th day of February, 2017.

>*/s/ Craig D. Mills*
>Craig D. Mills
>BUCHANAN INGERSOLL & ROONEY
>50 South 16th Street, Suite 3200
>Philadelphia, PA 19102
>Tel: (215) 665-8700
>Fax: (215) 665-8760
>craig.mills@bipc.com
>North Carolina Bar No. 18729
>
>*Counsel for Plaintiff*